[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR ORDER (NO. 157.00)
This case came to this court on a motion for order and a motion for counsel fees, which motion for counsel fees is decided outside of this opinion. The parties presented their evidence and made their arguments and the case was submitted to this court. In sum and substance the motion for order in CT Page 4499 paragraph two requires the court to enter a permanent custody finding at the conclusion of the hearing.
This court heard evidence on May 11 and May 12, 1992. There was an attorney representing the mother. There was an attorney representing the father. There was an attorney representing the minor child.
Testimony was presented from a constable in the Washington Depot Police Department. Testimony was presented from Trooper Tomlinson, the resident trooper in Washington Depot. Testimony was given by a Frank McGuire concerning his knowledge of the mother. The mother testified, not on direct examination but after being called to the stand by the husband's attorney. The mother's attorney had made a representation on direct examination that he chose not to put her on the stand. The father testified. In addition, the attorney for the child, Attorney Karen Reynolds, testified.
In addition, there were two family relations' reports submitted into evidence. The first family relations officer's report was marked as Child's Exhibit One and was prepared by Janet Esposito Daigle and dated June 13, 1991. Ms Daigle testified on direct and cross-examination concerning the contents of her report. As a result of that report, her recommendation was that the custody of John A. Pantan, Jr., the minor child, be granted to the father.
Ms. Daigle's report indicated that both of the parties lived in suitable housing. The child, John A. Pantan, Jr., date of birth January 31, 1983, is presently nine and a half years old approximately. He was nine in January. The Family Relations' report prepared by Ms Daigle is a comprehensive report consisting of eleven pages. In the evaluation section there is an indication that a transformation occurred in the mother's personality following the dissolution. The evaluation indicates that there was a distancing from and most often a severing of ties with friends and family. The report indicates the following on page ten of exhibit one of the minor child:
 "Her entire life's focus became her son. Her desire to avoid direct contact with the father and to maintain control over the child was such that eventually she resorted solely to the use of the mail system. If she has rationalized her need for maintaining control over her son, she appears to have utilized as reasons for this thinking the father's past marriage infidelity and her son's dual citizenship. CT Page 4500
 Precisely that which most terrifies the mother — losing her son — is that which will inevitably come to pass if she is allowed to continue to dismiss the father's critical role in his son's life. Tragically, there is serious question as to the mother's capability of modifying her thinking with regard to this matter."
This evaluation led to Ms Daigle's recommendation. This court finds the report of Ms Daigle and her testimony to be valid, persuasive and substantial evidence concerning the best interest of the minor child pursuant to the statute.
Thereafter, as shown on defendant's exhibit two, report was prepared by Karen Kutno, a family relations counselor, which report was prepared March 23, 1992, pursuant to court order. Ms Kutno testified concerning this report and the contents. She recited in her report that the mother has refused to discuss this matter with the Family Services unit except to reiterate her belief that her son was wrongfully removed from her custody. It states that she would not cooperate with the Family Services unit as she does not believe that that office is the proper authority to deal with the custody matter. She refused to sign a release authorization or schedule a home visit at her residence with her son. She stated to the family relations officer that the court did not have the power to modify custody nor does it have the power to order that Mr. Pantan retain custody.
The evaluation as prepared by Ms Kutno indicates on page two of defendant's exhibit two:
 This matter concerns custody of a nine year old, John Pantan, Jr., who has lived with his father since July of 1991. John is doing well in his father's care and has expressed his desire to attend school by his home. This sensible arrangement is also recommended by his counselor.
 John Pantan has shown himself well able to care for his son and function as the custodial parent. However, he continues to be faced with the seemingly impossible task of attempting to work with his former wife in any meaningful fashion. Ms Hahn-Pantan is possessed of either a total unwillingness or an inability to face the reality of the CT Page 4501 situation. Unfortunately, this is causing her son to distance himself from her, as young John becomes more uncomfortable with her behaviors and attitudes that he cannot understand."
The recommendation of Ms Kutno was that custody be with the father. Note that when this evaluation was completed on March 23, 1992, the Family Relations officer indicated on page one under Living Arrangements: "Physical accommodations have not been an issue in this custody matter."
This court, however, found that since that report the mother has removed herself from her prior residence at 136 River Road, Washington Depot, Connecticut, and has moved herself to Steep Rock Park in Washington Depot where she is living in a tent. The tent has two sleeping bags and two pillows by her testimony. What personal items she has left she has placed in storage.
The wife has further notified her husband, pursuant to defendant's exhibit one, that she requests to remove the minor child out of the jurisdiction of Connecticut for more than four consecutive weeks. This is dated April 27, 1992.
The wife apparently works part time at what she describes as "The Cafe" and does some gardening and maintenance and painting in her own business. The current status of her living arrangements are uncertain since a permit is required, and her written permit expired. She claims she has a verbal agreement for her to continue to live in the park for another thirty days. This arrangement as to housing is, in this court's opinion, unsuitable for a nine year old. Apparently this young man is bright, articulate and needs a place that has adequate housing for him. The family relations officer, Karen Kutno, amended her recommendation to prohibit overnight visitation because of the wife living in a tent.
Ms Kutno also said that she considered the wishes of the child as she found him to be of sufficient age and capable of forming an intelligent preference. When canvassed by this court, Ms Kutno indicated that she thought, based on his education and his awareness at nine and a half, he was of sufficient age. The fact that he had made his decision in a logical manner led her to conclude that he was capable of forming an intelligent preference. He wants to be with his Dad.
The attorney for the child has indicated that her client wants to be with Dad as the custodian. CT Page 4502
The mother, at one point, wanted the family relations officer, Ms Daigle, arrested when Ms Daigle made arrangements to see the child at the father's home without permission of the mother. The mother had refused such a home visit.
It is clear that the relationship between the mother and the father has gotten worse. The mother has refused to cooperate with the family relations officer. The mother refused to testify in her case in chief. The mother testified only when the husband's attorney called her to the stand. A great number of her answers to questions were not responsive. The answers appeared to be evasive. Her present living condition is not suitable for an nine year old boy who is a good student. There is presently no running water at the camp site, no telephone, no electricity, no modern plumbing and no bedroom furniture. The mother gave no testimony as to how she cooks or would prepare his meals or attend to his school homework as it becomes due.
The court places great weight on the recommendations of the family relations officers who are trained in this area. Both family relations officers come with substantial training and experience in custody matters.
The wife does not appear to be responding to situations in a reasonable manner. Refusal to testify, removal to a tent and evasive answers do not appear reasonable under all the circumstances.
Ms Kutno, when questioned, indicated that she would recommend supervised visitation at this time to err on the side of caution.
This court is given the statutory mandate in Connecticut General Statutes 46b-56 as follows:
 In making or modifying any order with respect to custody or visitation, the court shall be guided by the best interest of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, . . . .
This court has considered the statutory criteria and all of the evidence and arguments presented and makes the following orders:
1. Custody of the minor child to the father.
2. Mother shall have supervised visitation with the minor child at the home of her brother, Karl Hahn, at 9 Knollwood CT Page 4503 Drive, Newtown, Connecticut on alternating weekends from 10:00 a.m. Saturday to 5:00 p.m. Saturday and 10:00 a.m. Sunday to 5:00 p.m. Sunday. Father shall deliver the child to the residence of Karl Hahn and pick him up on the days visitation is to be exercised. Mother shall give 24 hour notice if she is going to cancel visitation. There shall be no visitation outside of the State of Connecticut, no overnight visitation, no weekly visitation or no extended visitation without further orders of the court. Said visitation to begin on May 23, 1992.
 If the mother secures a permanent, proper residence, she may petition the Bridgeport Superior Court requesting that an updated visitation study be prepared by the Family Relations office. The court may request the Family Relations office to mediate an agreement concerning visitation. If such mediation is unsuccessful, the Family Relations office may submit said visitation study together with its recommendations concerning visitation to the Bridgeport Superior Court which shall conduct such hearings as may be required and shall enter appropriate orders in the best interests of the child.
3. The mother shall have reasonable and flexible telephone contact with the minor child. The father shall cooperate in fostering continuing telephone contact by the mother.
4. The minor child shall attend school in Washington Depot, Connecticut until the end of the school year. Thereafter, he shall attend school in such city or town in which the custodial parent resides.
5. The attorney for the child shall turn over to the father, the custodial parent, the child's German and United States passports together with any other personal documents of the child in her possession.
EDWARD R. KARAZIN, JR., JUDGE